[Cite as *State v. Bradley*, 2025-Ohio-4981.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 2025CA00007 |
| Plaintiff - Appellee | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Court of Common Pleas, Case No. 2024-CR-1371 |
| BRADEN LEMAR BRADLEY | Judgment: Affirmed |
| Defendant – Appellant | Date of Judgment Entry: October 30, 2025 |

**BEFORE:** Andrew J. King; Kevin W. Popham; David M. Gormley, Appellate Judges

**APPEARANCES:** CHRISTOPHER A. PIEKARSKI, for Plaintiff-Appellee; D. COLEMAN BOND, for Defendant-Appellant.

*King, J.*

{¶ 1} Defendant-Appellant Branden Bradley, aka Branden McElroy, appeals the January 3, 2025 judgment of conviction and sentence of the Stark County Court of Common Pleas. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2} In 2024, C.P. and her husband S.P. lived across the street from the victim in this matter, X.F. C.P. was aware that Appellant lived with X.F. and that they had one child in common. The two families were well acquainted; their children played together and C.P. sometimes provided transportation to Appellant.

{¶ 3} On June 17, 2024, C.P. and S.P. were in their front yard when they observed X.F. and Appellant in front of their home arguing. C.P. saw Appellant push X.F.

into the side of his SUV. She watched as X.P. ducked away from Appellant to avoid further physical contact, ran around appellant's SUV and into the front yard. Appellant then got into his SUV, backed out of the driveway and drove forward into the yard, attempting to hit X.F. X.F. had to jump in front of her van, which was parked on the street, in order to avoid getting hit. Appellant then pulled his SUV up alongside X.F.'s van and threw something inside. Somebody inside the van threw the object back out. Appellant got out of his vehicle, picked the item up off the road, threw a lit cigar into X.F.'s van, and took off.

{¶ 4}   X.F. called 911. She stated that Appellant had thrown a lit cigar into her van while her children were in the van and had tried to hit her with his vehicle. X.F. then left the scene. When police arrived, C.P. and S.P. provided written statements as to what they had observed. X.F. did not return to the scene while police were present and police never spoke to her.

{¶ 5}   X.F. recanted her allegations almost immediately. She visited Appellant's probation officer and told him Appellant never placed his hands on her and never tried to hit her with his vehicle. She appeared before the grand jury and repeated the same account. After Appellant was indicted, X.F. wrote a letter to the court containing the same story and labeling the incident a misunderstanding.

{¶ 6}   Nonetheless, on July 19, 2024, the Stark County Grand Jury returned an indictment charging Appellant with one count of domestic violence. Due to Appellant's prior convictions for domestic violence, the charge was a felony of the third degree.

{¶ 7}   Appellant rejected the State's plea offer and elected to proceed to a jury trial which began on December 11, 2024. The State called C.P. who testified as outlined

above. The jury also heard X.F.'s 911 call and several jail calls between X.F. and Appellant. The State also called Appellant's probation and parole officers. Appellant called X.F. to testify on his behalf. X.F. again stated Appellant did not put his hands on her or try to strike her with his vehicle.

{¶ 8}   After hearing the evidence and deliberating, the jury convicted Appellant as charged. Appellant was subsequently sentenced to a 30-month prison term.

{¶ 9}   Appellant filed an appeal and the matter is now before this court for consideration. He raises two assignments of error as follows:

I

{¶ 10} "THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

II

{¶ 11} "THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS RIGHTS UNDER THE 6TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION."

I

{¶ 12} In his first assignment of error, Appellant argues his conviction for domestic violence is against the manifest weight of the evidence. We disagree.

Standard of Review

{¶ 13} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. *State v. Thompkins*, 78 Ohio St.3d 380, 387(1997) "While the test for sufficiency requires a

determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion." *Id*. at 390.

{¶ 14} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

Appellant's Arguments

{¶ 15} Appellant argues the jury lost its way in believing S.P.'s account of events over X.F.'s. He argues X.F. "consistently stated and testified under oath that Appellant did cause or attempt to cause her physical harm." (Sic)[1] Brief of appellant at 16. However, jurors are routinely instructed that they are not required to believe a witness simply because they are under oath. This jury was so instructed. Transcript of trial (T.) 284.

{¶ 16} Moreover, it is well established that the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182 (1990). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). A jury is free to believe

---

[1] We presume counsel for appellant intended to say – did *not* cause or attempt to cause physical harm.

all, part, or none of any witness's testimony. See *State v. Raver*, 2003-Ohio-958, ¶ 21 (10th Dist.), citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). Simply because the jury believed the State's evidence over Appellant's does not render Appellant's conviction against the manifest weight of the evidence. Upon review of the entire record, we find the jury in this matter did not lose its way in rejecting the testimony of X.F., believing the State's evidence, and convicting Appellant.

{¶ 17} The first assignment of error is overruled.

II

{¶ 18} In his second assignment of error, Appellant argues his counsel rendered ineffective assistance because he failed to access and review most of the discovery provided by the state through Matrix, a web-based case management tool used by the State. We disagree.

Standard of Review

{¶ 19} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

Appellant's Arguments

{¶ 20} Before Appellant's trial began, two conversations took place. The first involved Appellant's rejection of the State's plea offer which had been discussed at length during a previous hearing. Appellant had made it clear he wished to proceed to trial. T. 7

{¶ 21} The second conversation involved the State advising the trial court that counsel for Appellant had failed to access most of the discovery the State had provided via Matrix. Of eight publications made by the State, counsel for Appellant had accessed only two. T. 14. Information that counsel failed to review included the criminal history of neighbor C.P.'s husband, text messages and phone calls from Appellant to X.F., a duplicate copy of the 911 call, and statements Appellant had made to his probation officer and his parole officer establishing that Appellant lived with X.F. and had a child in common with her. A lengthy conversation followed. Counsel stated that while he had not accessed everything provided by the State, he was in possession of C.P.'s statement to police, X.F.'s letter to the trial court, and he was further aware of the content of phone calls and texts between Appellant and X.F. T. 19, 25. The trial court provided Appellant with the opportunity to either request a continuance so that he and his counsel could review all of the discovery or to go to trial that day. Appellant responded he wished to go forward stating: "I pretty much know everything. I don't – like there's nothing I ever said on there really bad and nothing like, nothing but the truth." T. 27.

{¶ 22} We first note it may be a sound tactical decision to forgo discovery, and is not necessarily ineffective assistance of counsel, *State v. Mourer*, 2023-Ohio-4431 (5th Dist.) ¶ 25 citing *Kimmelman v. Morrison*, 477 U.S. 365 (1986), and *State v. Clawson*, 1996 WL 752546, *3 (5th Dist.1996). In this matter, counsel did not completely forgo

discovery. The record reflects counsel was already in possession of the most critical pieces of evidence – C.P.'s eyewitness statement and X.F.'s recantation. While Appellant now faults counsel for failing to examine certain pieces of discovery, and for this decision allegedly impacting plea negotiations and trial, we note it was Appellant who ultimately made the decision to go to trial instead of accepting the trial court's offer of a continuance *after* he had been advised counsel had not accessed certain information. Moreover, Appellant complains counsel failed to access evidence that had no bearing on this trial such as the criminal record of a witness the State never called to testify.

{¶ 23} However, even if we were to assume arguendo that trial counsel's performance fell below an objective standard of reasonable representation for failing to review portions of the discovery provided by the State, Appellant has failed to show he was prejudiced as a result. The evidence in this matter was overwhelming. There was an eyewitness to the incident of domestic violence, X.F. made a 911 call that jurors listened to, and Appellant made incriminating statements in phone calls from the jail to X.F. which established their relationship as family or household members.

{¶ 24} Based upon the foregoing, we find Appellant has not demonstrated trial counsel was ineffective. Accordingly, the second assignment of error is overruled.

For the reasons stated in our accompanying Opinion, the judgment of the Stark County Court of Common Pleas is affirmed.

Costs to Appellant.

By: King, P.J.

Popham, J. and

Gormley, J. concur.